IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| BUSHRA GORDON, | * |
| Plaintiff, | * |
| vs. | * |
| | CASE NO. 4:20-CV-84 (CDL) |
| BRIAN ROWLEY and U.S. NATIONAL BANK ASSOCIATION, | * |
| | * |
| Defendants. | * |

O R D E R

At the pretrial conference, the Court deferred ruling on Defendants' motion for contempt and Plaintiff's motion in limine regarding litigation financing. The Court now issues the following rulings on those motions.

**I. Defendants' Motion for Contempt (ECF No. 39)**

The Court previously ordered non-party Peach Injury Network, LLC to comply with a subpoena and produce (1) any executed agreement between Plaintiff and Peach Injury and (2) documents regarding the sale of/current ownership of Peach Injury. Order 3 (June 30, 2021), ECF No. 36. The Court further ordered that if no such documents existed, Peach Injury should produce a verified response to the subpoena stating so. Peach Injury did not comply with the Court's order, and Defendants filed a motion for contempt. The Court addressed the issue at the pretrial conference and warned that failure to submit an

affidavit by August 18, 2021 would result in serious contempt sanctions. Peach Injury submitted an affidavit stating that no documents exist other than the documents that have already been produced to Defendants. Narottam Aff. ¶ 5, ECF No. 53. The Court thus declines to hold Peach Injury in contempt, and the motion for contempt (ECF No. 39) is denied.

**II.  Plaintiff's Motion in Limine (ECF No. 47)**

The Court ruled on most subparts of Plaintiff's motion in limine at the pretrial conference but deferred ruling on Plaintiff's request to exclude evidence that she received litigation financing. Plaintiff argues that the evidence is irrelevant, and she suggests that the evidence is inadmissible under the collateral source rule. Defendants contend that the evidence is relevant and admissible.

Plaintiff received funding from three companies: Injury Financing, LLC d/b/a Capital Financing ("Capital Financing"), Priority Responsible Funding, LLC ("Priority Funding"), and Peach Injury Network, LLC ("Peach Injury"). The funding was not for medical expenses. Instead, it was for litigation expenses and personal expenses. Plaintiff, along with individuals and entities hired by her legal team, received funds that were secured by her claim in this action: an "advance" of $10,000 from Capital Financing that Plaintiff used to purchase a car for her son; loans of more than $40,000.00 from Priority Funding,

2

which proceeds were paid directly to the following individuals and entities: Dr. Hector Miranda-Grajales (life care planner), Boehme Associates of Northeast Florida (neurologist and biomechanical engineer), Dr. Sean Mahan (radiologist), LitBit Corp. (jury analyst), Zimmerman & Sanchez (legal research group), and Elizabeth Gallo/Accredited Court Reporting (court reporters); and a $7,000.00 loan from Peach Injury to pay the expert fees of Dr. Silvio Reyes, whose testimony was excluded in a prior action that was dismissed and who will not be a witness in the upcoming trial.

The Court is not convinced that these funds are properly categorized as collateral source benefits. In Georgia, when "a tort plaintiff has been compensated by her health insurer, or other non-defendants, *for injuries that have been caused by the defendant* . . . [t]he collateral source rule provides that the plaintiff is entitled to recover those already-reimbursed expenses." *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1298 (11th Cir. 2018) (emphasis added). "The collateral source rule, stated simply, is that the receipt of benefits or mitigation of loss from sources other than the defendant will not operate to diminish the plaintiff's recovery of damages." *Id.* (quoting *Polito v. Holland*, 365 S.E.2d 273 (Ga. 1988)). "Given this prohibition against a credit to the defendant for expenses already recovered by the plaintiff, it

3

follows that evidence of collateral benefits is inadmissible 'if the only proposition for which it is offered is in reduction of damages, because it is then offered to help prove a proposition which is not a matter in issue.'" *Id.* (quoting *Polito*, 365 S.E.2d at 274). But here, the funding Plaintiff received was not for injuries caused by Defendants. Rather, the funding was in the nature of a personal loan secured by Plaintiff's potential recovery in this action. For the most part, it was used to pay expenses of this litigation. It is not classic collateral source evidence.

That does not mean the evidence is admissible. Plaintiff argues that the evidence has very little probative value and should not be admitted. Defendants contend that it is relevant and admissible. First, Defendants argue that the Capital Funding "advance," which Plaintiff obtained so she could purchase a car for her son, is "admissible under Federal Rule of Evidence 404 in that it shows Plaintiff's motive for increasing the value of her case through excessive medical treatment to cover the costs of repaying loans received by using her claims as collateral." Defs.' Resp. to Pl.'s Mot. in Limine 6, ECF No. 54. So, Defendants contend that Plaintiff's decision to apply for an advance from Capital Funding is "other acts" evidence under Rule 404(b)(2) and that it should be permitted for proving motive. The Court is not convinced that this evidence will shed

4

any light on Plaintiff's motives in seeking medical treatment or on the reasonableness and necessity of Plaintiff's medical treatment. Furthermore, if Defendants are permitted to introduce evidence of the Capital Funding advance, Plaintiff would have to be afforded an opportunity to present evidence of why she needed the loan and how she qualified for it. Finally, the evidence would cast a spotlight on Plaintiff's financial condition, and such evidence is generally irrelevant. To the extent that the evidence has any probative value, that value is substantially outweighed by the likelihood of unfair prejudice to Plaintiff and confusion of the issues by the jury. Therefore, the evidence is excludable pursuant to Federal Rule of Evidence 403. For these reasons, evidence regarding the Capital Funding advance shall be excluded from trial.

Second, Defendants contend that evidence of the Priority Funding loan agreements, which Plaintiff's counsel entered to secure funding to pay experts, a jury analyst, and court reporters, is admissible. Specifically, Defendants want to introduce evidence that two of Plaintiff's experts—Dr. Miranda-Grajales and Dr. Boehme—received direct payments from Priority Funding under these agreements with Plaintiff's counsel. Evidence that Plaintiff (or her counsel) paid the experts to testify is certainly admissible evidence of bias. But the underlying source of the funding seems to be only a tangential

5

issue here. Defendant argues that *ML Healthcare* is instructive. There, a litigation investment company referred the injured, uninsured plaintiff who had a viable tort claim to treating physicians, and it paid the plaintiff's medical bills. Those treating physicians then testified on behalf of the plaintiff at trial. For the litigation investment company's business model to work, the plaintiffs whose lawsuits it subsidizes must win, which means that the treating physicians who want to keep the referrals must provide favorable testimony. *See ML Healthcare*, 891 F.3d at 1302. Accordingly, although the medical bills paid by the litigation investment company in *ML Healthcare* were classic collateral benefits, evidence of the funding arrangement was admissible to show bias. *Id.* at 1303.

Here, unlike in *ML Healthcare*, there is no evidence of a scheme that makes Priority Funding's involvement probative on any issue—no evidence that the two experts routinely testify for plaintiffs who receive loans from Priority Funding or have an incentive to provide favorable testimony so Priority Funding will continue to hire them. Rather, based on the present record, Plaintiff's counsel hired the experts and paid for them with loans he obtained from Priority Funding. So, while Defendants shall certainly be permitted to elicit testimony that Dr. Miranda-Grajales and Dr. Boehme have been paid by Plaintiff's legal team for their work on this case, the Court is

6

not convinced that the probative value of evidence regarding the underlying funding source—including evidence of the Priority Funding agreements and the evidence of how those agreements came to be—outweighs the danger of confusing the issues, undue delay, wasting time, or needlessly presenting cumulative evidence. Accordingly, evidence of the Priority Funding agreements shall be excluded from trial.

Third, Defendants seek to admit evidence that Plaintiff received a $7,000.00 loan from Peach Injury. Plaintiff's counsel represents that Plaintiff received this loan to pay the expert fees of Dr. Silvio Reyes, whose testimony was excluded in a prior action that was dismissed, and who will not be a witness in the upcoming trial of this action. Plaintiff's own testimony regarding the Peach Injury loan has been inconsistent; at one point, she testified that she had received funding from Peach Injury, but she also stated in an interrogatory response that she did not receive funding from Peach Injury. Defendant wants to use this inconsistent testimony to impeach Plaintiff. While the Court understands that prior inconsistent statements can be used to impeach a witness, the Court finds that the probative and impeachment value of this marginally relevant evidence is substantially outweighed by the danger of unfair prejudice and confusion of the issues. Accordingly, evidence of the Peach

7

Injury loan shall be excluded under Federal Rule of Evidence 403.

## CONCLUSION

As discussed above, Defendant's motion for contempt (ECF No. 39) is denied, and Plaintiff's motion to exclude evidence of litigation funding (ECF No. 47) is granted to the extent set forth above.

IT IS SO ORDERED, this 4th day of November, 2021.

                                        S/Clay D. Land
                                        CLAY D. LAND
                                        U.S. DISTRICT COURT JUDGE
                                        MIDDLE DISTRICT OF GEORGIA